1:08CV0193

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR 0 8 2008

DAVID J. MALAND, CLERK
BY
DEPUTY _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR - 8 2008

DAVID J. MALAND, CLERK
BY
DEPUTY _____

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, Beaumont

Keith Russell Judd, For President of USA, Plaintiff,

v.                                                      No. _____

Federal Communications Commission, et al.,
Federal Election Commission, et al., Defendants.

EMERGENCY ELECTIONS COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND DAMAGES

Comes now, Keith Russell Judd, Plaintiff, Pro Se, and prays that this Court award Declaratory Judgment, Injunctive Relief and Monetary Damages in the amount of $123,846,329.67, against the Defendants, Federal Communication Commission, et al., <u>after a jury trial</u>, pursuant to the Seventh Amendment of the United States Constitution. **DEMAND FOR JURY TRIAL.**

### THREE JUDGE DISTRICT COURT REQUIRED

Plaintiff challenges the constitutionality of certain provisions of the Federal Election Campaign Act, 2 U.S.C. § 431, et seq., and as applied, constitutionality of the Communications Act, 47 U.S.C. § 315, et seq., and the Bipartisan Campaign Reform Act of 2002, which requires this "**action shall be heard by a 3-judge court**", pursuant to 2 U.S.C. § 437h(a)(1); 28 U.S.C. § 2284.

### ADMINISTRATIVE RECORD AND DECISION FOR REVIEW

Attached hereto is the March 7, 2008, Memorandum Opinion and Order of the Federal Communication Commission, Commissioners: Chairman Martin, Commissioners Copps, Adelstein, Tate, and McDowell. **In the Matter of KEITH RUSSELL JUDD, On Request for Inspection of Records**, FCC No. 08-74.

### JURISDICTION OF THIS COURT

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 & Communications Act, & 2 U.S.C. § 437h(a)(1) & Administrative Procedure Act, & Privacy Act, 5 U.S.C. § 552a(g) & Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B).

CLAIMS FOR RELIEF

1.) Plaintiff asks this Court to 47 U.S.C. § 315(e)(1)(A), requiring broadcasters to keep records of broadcast requests made by or on behalf of any candidate to be Constitutional, and requests enforcement ;

2.) Plaintiff asks that the FCC be required to provide "all information" of enfocement complaints by Candidate, Keith Russell Judd, or on behalf of, be disclosed pursuant to the Freedom of Information Act and Privacy Act, as the search for such records was inadequate as required by law ;

3.) Plaintiff asks for "actual damages" pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(4), sustained for FCC's failure to maintain adequate and accurate records resulting in adverse decisions ;

4.) Plaintiff asks for an Order requiring the FCC to enforce 47 U.S.C. § 315(a), requiring broadcasters to provide equal time to Candidate ;

5.) Plaintiff asks this Court to Declare unconstitutional and for Injunctive Relief, 47 U.S.C. § 315(a)(1)&(2)&(3), which excludes bonafide newscast, bonafide news interview, bonafide news documentary, and bonafide on-the-spot covarage of bonafide news events; from the equal time and equal opportunities enforcement ;

6.) Plaintiff asks for enforcement of the "fairness doctrine", requiring broadcasters "to afford reasonable opportunity to for the discussion of conflicting views on issues of public importance." See 47 C.F.R. § 73.1910 and 47 U.S.C. § 315(a) and 2 U.S.C. § 431, et seq. ;

7.) Plaintiff asks this Court to Declare unconstitutional the provisions of the Federal Election Campaign Act, 2 U.S.C. § 431, et seq., which exclude broadcast news coverage as defined by 47 U.S.C. § 315(a)(1),(2),(3)&(4), as "inkind" Campaign Contributions and Campaign Advertising. Broadcaster Companies selectively broadcast and exclude covarage for purposes of Campaign Advocacy, Advertisement, and Campaign and issue contributions ; (See attached FEC administrative record);

DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff, Keith Russell Judd, Pro Se, prays for Declaratory Judgment declaring the cited provisions as unconstitutional, and for Injunctive Relief requiring compliance, enforcement, and production of records for the purposes of enforcement and to provide the public with information, and for monetary damages in the amount of $123,846,329.67, plus any other relief appropriate and just.

RESPECTFULLY SUBMITTED,

Date: March 16, 2008
www.vote-smart.org

*Keith Judd*
KEITH RUSSELL JUDD FOR PRESIDENT OF USA
Reg.#11593-051, Unit X-B
Federal Correctional Complex Low
P.O. Box 26020
Beaumont, Texas, 77720
(409)838-2859 or (432)333-7784

email - keithjudd11593051@voiceforinmates.com

PROOF OF FILING AND SERVICE BY INMATE CONFINED

I declare under penalty of perjury pursuant to Houston v. Lack, 487 U.S. 266 (1988), that on March 16, 2008, I mailed this Complaint to:

1.) U.S. District Court, P.O. Box 3507, Beaumont, Texas, 77704-3507

2.) FCC, 1919 M Street, N.W., Washington, D.C., 20544

3.) FEC, 999 E Street, N.W., Washington, D.C., 20463

By *Keith Judd*

FEC#C00302919,at,1-800-424-9530      U.S. Passport No. 132617459
www.fec.gov        1-800-872-9855        www.MTV.news.com
www.fcc.gov            email - keithjudd11593051@voiceforinmates.com
http://www.voiceforinmate.com/keithjudd11593051.htm

ATTACHED ADMINISTRATIVE RECORD
1.) March 7, 2008, FCC No. 08-74
2.) February 20, 2008, FEC#Coo3o2919, Denial of Presidential Matching Funds
3.) March 6, 2008, FEC#C00302919, Denial of Record or Certification for Presidential Primary Federal Matching Funds, 26 U.S.C. §§ 9031-9042



FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

March 31, 2008

Keith Russell Judd Reg. #11593-051
FCI Beaumont Low
Federal Correctional Institution
P.O. Box 26020
Beaumont, TX 77720

Dear Mr. Judd:

    This is in response to your letter dated March 17, 2008. Primary candidates seeking federal matching funds must certify that they have met the "threshold requirement" for eligibility by raising matchable contributions totaling more than $5,000 in each of 20 states from residents of those states. A threshold submission must be filed with the Federal Election Commission which contains a list of contributors within each of at least 20 states in which the candidate has received contributions, of which the matchable portion must total more than $5,000. A maximum of $250 of each individual's contribution is matchable, so a threshold submission is made up of contributions from many different individuals in each state. Other documentation to support the matchability of the contributions is also required, such as bank statements and copies or images of contribution checks.

    Enclosed is a copy of the Commission's <u>Guideline for Presentation in Good Order (2008)</u> (Guideline) which contains detailed guidance on how to file a threshold matching funds submission. Candidates seeking federal matching funds are required to follow the Guideline. As provided by 11 CFR §9036.4(a), the Commission will not accept for review and certification of payment any matching fund request that has not been prepared or presented in conformance with the standards of good order as outlined in the Guideline.

Sincerely,

*Wanda J. Thomas*

Wanda J. Thomas
Deputy Assistant Staff Director
Presidential Election Campaign Fund



# City of Albuquerque

P. O. Box 1293   ALBUQUERQUE, NEW MEXICO 87103

February 10, 2005

Keith Russell Judd
Register Number 11593-051
Low Security Correctional Institution – Allenwood
P. O. Box 1000
White Deer, PA 17887

Re: your request to inspect public records

Dear Mr. Judd:

The City Clerk's office received your letter dated February 1, 2005, wherein you requested this office "to send me all information on my 1993 and 1997 campaigns for Mayor of Albuquerque."

You may call the City Clerk's office at (505) 768-3030 to make an appointment to inspect these records. There is no fee associated with inspecting the records, but there is a fee for copying the records.

If you wish to have the records mailed to you without inspection, you will need to pay for copying charges of fifty cents per page in advance of the records being sent to you. Your check or money order should be made payable to the order of "City of Albuquerque".

The record from the 1993 election is the certificate of canvass that consists of two pages. The copying costs for these records will be $1.00.

The records in the City Clerk's file from the 1997 election concerning you consist of one audiotape and 100 pages. The copying costs for these records will be $50.00 for paper copying and $1.00 for the audiotape.

In addition there are 62 pages that appear to be documents filed with various courts in litigation you filed. The copying cost for these records will be $31.00.

If you wish a copy of all of the above-described records, the cost will be $83.00.

Sincerely,

Judy N. Chavez
City Clerk

Federal Communications Commission                              FCC 08-74

Before the
Federal Communications Commission
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| KEITH RUSSELL JUDD | )   FOIA Control No. 2007-531 |
| | ) |
| On Request for Inspection of Records | ) |

MEMORANDUM OPINION AND ORDER

Adopted: March 5, 2008                                   Released: March 7, 2008

By the Commission:

## I. INTRODUCTION AND BACKGROUND

1. This Memorandum Opinion and Order denies an application for review filed by Keith Russell Judd (Judd) of the Media Bureau's (MB) response to his Freedom of Information Act (FOIA) request. Judd requested "all information relevant to the FCC's investigation into and enforcement of my requests for broadcasters to provide equal opportunity to provide for paid political advertisements nationwide."[1] MB responded[2] by releasing to Judd copies of two letters from MB to Judd, as well as several printouts from the Commission's "Informal Complaints and Inquiries" database.[3]

2. In his application for review,[4] Judd complains that MB did not disclose "all information as to my numerous requests to media broadcasters and internet broadcasters, nationwide in my active campaign as a Democratic Candidate Legally Qualified for Office of the President of the United States."[5] Judd indicates that he has filed "monthly complaints to the Federal Communications Commission, asking for ENFORCEMENT of the <u>Communications Act</u>, 47 U.S.C. § 315[6] and the fairness doctrine."[7] He states:   -

---

[1] Letter from Keith Russell Judd to Leslie F. Smith, Privacy Analyst (Sept. 4, 2007).

[2] Letter from Michael S. Perko, Chief Office of Communications and Industry Information, MB to Mr. Keith Russell Judd (Sept. 14, 2007) (Response) and attachments.

[3] FCC CIB-1, 66 Fed. Reg. 51955 (Oct. 11, 2001).

[4] Letter from Keith Russell Judd to Federal Communications Commission (Sept. 24, 2007) (AFR).

[5] *Id.*

[6] Judd is referring to the "equal time doctrine" contained in 47 C.F.R. § 315(a). This doctrine requires Commission licensees who permit legally qualified candidates for public office to use a broadcast station to afford equal opportunities to other candidates for that office to use the station. *See also Rosenberg v. Everett*, 328 F.3d 12, 16 (1st Cir. 2003) (discussing the equal time doctrine: "once a candidate is permitted to use the station, the station must provide other candidates 'with equal time at an equal rate, at a

Federal Communications Commission     FCC 08-74

With my complaints against nationwide broadcasters, the Federal Communications Commission is obligated to investigate each complaint, and obtain from the nationwide broadcasters, their lists of requests for equal political advertisement time at the same cost, and any other requests or demands under the Communications Act.[8]

He further states "I am appealing the search for records under the Freedom of Information Act . . . "[9]

## II. DISCUSSION

3. We will deny Judd's application for review. We conclude that the documents disclosed to Judd represent all of the responsive records discovered by MB's search of its files. We further conclude that there is no reason to fault MB's search or to believe that other responsive documents exist. Under the FOIA, an agency must conduct a search "reasonably calculated to uncover all relevant documents."[10] Further, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."[11] Here, MB searched its records and located in the Informal Complaints and Inquiries database and related files the records responsive to Judd's political broadcasting complaints. The FOIA requires no more.

4. Judd cites *LaCedra v. Executive Office for U.S. Attorneys* for the proposition that his request for "all information on myself" was sufficiently specific to seek "all information."[12] In *LaCedra*, a FOIA requester filed a request seeking "all documents pertaining to" the criminal case against him, followed by the statement that he "specifically" sought several enumerated items. The court faulted the agency for providing only the enumerated documents, and held that the request was "reasonably susceptible" to the broader reading of the request, *i.e.*, to be for "all

---

("Continued . . .")
comparable hour of the day, and with a similar format for presentation'"), quoting *Kennedy for President Comm. v. FCC*, 636 F.2d 432, 437 n. 33 (D.C. Cir. 1980).

[7] See 47 C.F.R. § 73.1910. See also 47 U.S.C. § 315(a) (broadcasters' obligation "to afford reasonable opportunity to for the discussion of conflicting views on issues of public importance."). The Commission ceased enforcement of the fairness doctrine (in contradistinction to the equal time doctrine) in 1987 after determining that such enforcement no longer served the public interest. *See Syracuse Peace Council v. FCC*, 2 FCC Rcd 5043 (1987), *aff'd*, 867 F.2d 654 (D.C. Cir. 1989), *cert. denied.*, 493 U.S. 1019 (1990).

[8] AFR.

[9] *Id.* Judd also asked that his records be corrected or amended pursuant to the Privacy Act (5 U.S.C. § 552a(d)(2)). Because, as discussed below, there is no further information to disclose, there is no basis to amend or correct Judd's records.

[10] See *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

[11] See *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

[12] 317 F.3d 345, 347-48 (D.C. Cir. 2003).

documents."[13] Here, Judd originally filed a request, citing the FOIA and the Privacy Act,[14] for "all information on myself."[15] Because Judd cited the Privacy Act, the Commission responded by asking Judd to clarify which system of records should be searched.[16] Judd responded that "specifically" he sought the information described in paragraph 1, above, regarding his equal time complaints. Accordingly, MB searched the Commission's informal complaints and inquiries system of records, which is the Commission's repository of information about equal time complaints, and related files.[17] Because Judd's narrower request was made in specific response to a request for clarification, it was appropriate for MB to search for those specific records.[18] Further, the request in *LaCedra* for all documents pertaining to a criminal case being prosecuted by the agency is much easier to fulfill without further clarification than one that applies to all the Commission's documents in any subject area. For these reasons, we find *LaCedra* inapposite.[19]

5. We find no merit to Judd's speculation, based on his own interpretation of section 315, that further records must exist.[20] The database records concerning Judd's complaints were typically designated "NRN," meaning "no response necessary."[21] This designation applies to informal complaints that are nonspecific, redundant, or otherwise non-actionable.[22] This designation supports the conclusion that no further records exist for these complaints. Further,

---

[13] *Id.* at 348.

[14] 5 U.S.C. § 552a.

[15] Letter from Keith Russell Judd to Federal Communications Commission (Jul. 6, 2007)..

[16] Letter from Leslie F. Smith to Mr. Keith Russell Judd (Aug. 13, 2007). *See* 47 C.F.R. § 0.554(a) (requiring request under the Privacy Act to specify the systems of records to be searched).

[17] *See* Informal Complaints and Inquiries, note 3, *supra*.

[18] *See Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 548 (6th Cir. 2001), *cert. denied*, 534 U.S. 1134 (2002) (Because the FOIA requires a requester to reasonably describe the records sought, the agency may reasonably require a clarification that narrows the scope of the search before processing the request).

[19] In any event, there is no reason to believe that there is any other information regarding Judd in any Commission records, since his contacts with the Commission appear to be limited to political broadcasting complaints.

[20] *See Iturralde v. Comptroller of the Currency*, 315 F.3d at 316 ("[m]ere speculation that as yet undiscovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them").

[21] *See* Response, Attachments.

[22] *See Political Primer 1984*, 100 FCC 2d 1476, 1478-79 ¶ 6 (1954) ("How to file a complaint"). We find no support for Judd's contention in his AFR that the Commission "is obligated to investigate each complaint," apparently without regard to its merit or compliance with Commission standards. In any case, that claim is beyond the scope of the FOIA. Additionally, Judd asserts that various statutes, including the Hatch Act (5 U.S.C. §§ 732 *et seq.*) and 18 U.S.C. § 245, require the Commission to "accommodate my federally protected activity for C[a]mpaigning for President of the United States . . . campaigning as a candidate for elective office, and participating in any program administered by the United States." AFR. We are unable to discern in this vague assertion any provisions of the cited statutes that might be relevant to Judd's FOIA claims.

| Federal Communications Commission | FCC 08-74 |
|---|---|

MB confirms that it has reexamined its files and consulted with relevant staff regarding Judd's complaints. MB indicates that even those complaints not designated "NRN" were similar in character to those that were, and that no further records related to those complaints exist.[23]

## III. ORDERING CLAUSES

6. IT IS ORDERED that Keith Russell Judd's application for review IS DENIED. Judd may seek judicial review of this action pursuant to 5 U.S.C. § 552(a)(4)(B).

7. The officials responsible for this action are the following Commissioners: Chairman Martin, Commissioners Copps, Adelstein, Tate, and McDowell.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

---

[23] We note that the first of the two letters released to Judd is a 1997 letter informing Judd that Commission staff had been unable to reach him by telephone because his telephone was out of order. It advised him to contact the Commission within 10 days to give the Commission more information about his complaint against three broadcast stations. Letter from Norman Goldstein, Chief, Complaints & Political Programming Branch to Mr. Keith Judd (Oct. 10, 1997). The second letter is a 1999 letter finding no basis to Judd's complaints that the Commission was "holding back the media" from broadcasting information about Judd's campaign for President and his criminal case. It informed Judd that the Commission may not interfere with a broadcaster's freedom of expression and that a candidate had the obligation to substantiate that he is in fact legally qualified to trigger a broadcaster's obligation to provide access. Letter from Robert Baker, Chief, Office of Political Programming to Keith Russell Judd (Nov. 22, 1999).